# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

AARON RICHARD PARKER, )
)
         **Plaintiff,** )
)
v. )   Case No. CIV-18-300-SPS
)
ANDREW M. SAUL, )
Commissioner of the Social )
Security Administration, [1] )
)
         **Defendant.** )

## OPINION AND ORDER

The claimant Aaron Richard Parker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was fifty years old at the time of the administrative hearing (Tr. 60). He has a high school education and has worked as a maintenance machine repairer, delivery route driver, millwright, safety technician, and safety supervisor (Tr. 84-85). The claimant alleges he has been unable to work since April 28, 2015, due to back and neck problems, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), depression, and high cholesterol (Tr. 223, 263).

**Procedural History**

In December 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 218-29). His application was denied. ALJ Jennie L. McLean conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 10, 2017 (Tr. 28-48). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioners' final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with occasional climbing ramps and stairs, kneeling, crouching,

crawling, and stooping, but never climbing ladders, ropes, or scaffolds (Tr. 39). Due to psychologically based factors, the ALJ found the claimant could learn, understand, remember, and perform simple tasks with routine supervision, relate to supervisors and co-workers on a superficial basis, and adapt to work situations, but could not have public contact or perform customer service work (Tr. 39). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national economy, *e. g.*, merchandise marker, final inspector, electronics worker, addresser, document preparer, and bench hand (Tr. 46-48).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinion of treating physician Dr. JaHannah Jamelarin, and (ii) identify jobs he could perform in light of the assigned RFC. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found the claimant had the severe impairments of degenerative disc disease of the cervical spine, generalized anxiety disorder, and depressive disorder (Tr. 31). The relevant medical evidence reveals that Dr. Jamelarin regularly treated the claimant for major depressive disorder and generalized anxiety disorder from December 2015 through January 2017 (Tr. 414-16, 447-55, 509-34). In June 2016, the claimant reported he was "less perfectionistic," working at a dog rescue up to ten hours per day, and had events coming up that he was looking forward to, including visiting with new friends (Tr. 529).

Dr. Jamelarin's treatment notes reflect that the claimant's symptoms waxed and waned; however, beginning in August 2016 she consistently found the claimant's appearance, speech, mood, affect, cognition, thought, and attitude were normal but that his judgment and insight were only fair (Tr. 513-22). By October 2016, the claimant reported he could work under certain circumstances, but could not return to his previous job due to the stress it caused and felt as though he could wean off some of his medication if he was working steadily (Tr. 513-22). Dr. Jamelarin indicated that the claimant's depression and anxiety were improved and that he did better with structure (Tr. 513). She also greed that the claimant could work, "especially if it was in a lower stress environment." (Tr. 513).

The record contains three medical source statements from Dr. Jamelarin. In a mental status form dated December 20, 2015, Dr. Jamelarin noted that the claimant's thought process was generally linear but somewhat distractible and that he was sensitive to perceived rejection and others viewing him negatively (Tr. 390). Dr. Jamelarin indicated that the claimant could perform work "around his house," but could not do so consistently due to increased anxiety, fatigue, and irritability (Tr. 390). She opined that the claimant could remember, comprehend, and carry out simple instructions on an independent basis, but would "struggle more interpersonally." (Tr. 390). In a letter dated May 5, 2016, Dr. Jamelarin stated it was not in the claimant's best interest to return to work "at this time," noting he continued to struggle with anxiety, attention, and a routine (Tr. 470). On March 6, 2017, Dr. Jamelarin completed a form titled "Mental Capacity Assessment" wherein she opined that the claimant was markedly limited in four aptitudes, including his ability to understand, remember, and carry out detailed instructions and maintain attention and

concentration for extended periods (Tr. 537-39). She also opined that the claimant was moderately limited in ten aptitudes, including his ability to: (i) understand and remember very short and simple instructions; (ii) sustain an ordinary routine without special supervision; (iii) interact appropriately with the general public; and (iv) accept instructions and respond appropriately to criticism from supervisors (Tr. 537-39). Dr. Jamelarin further opined that the claimant was slightly limited in six aptitudes, including his ability to: (i) make simple work-related decisions, (ii) ask simple questions or request assistance, and (iii) be aware of normal hazards and take appropriate precautions (Tr. 537-39). In support of her assessment, Dr. Jamelarin indicated that the claimant can have periods of decreased concentration that will impair his ability to recall instructions, particularly detailed instructions; he struggles with anergia, amotivation, and difficulty concentrating when depressed; he can have prominent irritability with his depression and anxiety; and he prefers a set routine (Tr. 537-39).

On March 9, 2016, state agency psychologist Edith King, Ph.D. completed a Mental RFC Assessment and found that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public (Tr. 109-10). Dr. King found the claimant was moderately limited in his ability to maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable

number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 109-10). Dr. King explained that the claimant could perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but could not relate to the general public, and has personality problems that could interfere with his basic abilities at times (Tr. 110). Dr. King's findings were affirmed on review (Tr. 127-29).

In her written opinion, the ALJ thoroughly summarized the claimant's testimony and the medical evidence. The ALJ gave the state agency psychologists' opinions great weight, finding they were consistent with the serial mental status findings, treating medical records, function reports, objective medical evidence, and the overall longitudinal record in its entirety (Tr. 45). The ALJ assigned limited weight to Dr. Jamelarin's May 2016 letter because it was inconsistent with: (i) the January 25, 2016, treatment note showing the claimant had normal appearance, speech, thought process, and cognition, and fair insight; and (ii) the June 6, 2016, treatment note showing the claimant reported he was medication compliant without side effects, regularly exercising, and working at a dog rescue up to ten hours per day (Tr. 45). The ALJ also assigned limited weight to Dr. Jamelarin's March 2017 opinions that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions, and to complete a normal workweek without interruptions from psychologically based symptoms, and would likely miss four days of work per month because such opinions were inconsistent with: (i) the July 6, 2016, treatment note showing the claimant was considering filing for unemployment, applied for

a job, and was building a deck on his house; and (ii) the October 13, 2016, treatment note showing the claimant reported he was doing "pretty good," applied for "a few jobs," and was helping to build fifty dog kennels at the dog rescue (Tr. 46).

The medical opinions of a treating physician such as Dr. Jamelarin are entitled to controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship, (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, she is required to "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. The ALJ's analysis of Dr. Jamelarin's opinion, as described above, falls short in this case. The ALJ appeared

to adopt Dr. Jamelarin's finding that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions (even though she stated she rejected this limitation) because she limited the claimant to learning, understanding, and remembering, and performing simple tasks (Tr. 39). Similarly, the ALJ appeared to adopt Dr. Jamelarin's moderate limitations in the claimant's ability to interact with co-workers and the general public because she limited the claimant to superficial interactions with co-workers and prohibited public contact (Tr. 39). However, the ALJ rejected (by failing to include or discuss) Dr. Jamelarin's opinion that the claimant was markedly limited in his ability to maintain attention and concentration for extended periods, as well as the remainder of her opinions on the claimant's moderate and slight limitations (Tr. 46). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of her own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Jamelarin's findings according to the appropriate standards and indicating what weight she was assigning to them, the ALJ should have explained why she found certain aspects of her findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr.

Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the opinions of the claimant's treating physician, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis. On remand, the ALJ should evaluate Dr. Jamelarin's opinion in accordance with the appropriate standards and determine what impact such evaluation has on the claimant's RFC and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**